Your Honors, my name is Tony Gaspage. I represent the appellant Cross Appellee American Seafoods and I'd like to reserve two minutes of time. Okay, now this case has cross appeals and it would probably be more efficient if you argued both pieces. At the same time, at first, you're saying instead of coming back. Okay. Yes. Yes. If that's okay. Yes, Your Honor. Well, this case is also complicated because there's been an intervening decision by this court about a month ago that deals with some of the issues. So I think it would be interesting to see what is still pending in this case versus what is not pending in this case. There were four issues brought up for appeal by American Seafoods with this, one of which has been resolved conclusively that had to do with a summary judgment standard versus a motion to compel standard on a maintenance rate. This case involves, in the broadest sense, how do you determine a maintenance rate for a seaman? A decision which we had believed was decided by this court previously but has been opened by the courts around the country to revisit those, it appears, but... We know from Barnes we look at the cost of maintenance on land as opposed to aboard the ship, right? Yes, in part, Your Honor. Okay, and you all thought it was 30 and the district judge found it was $37.97. Yes, well, and then a subsequent ruling that gave two different rates, which is part of the problem with the court's approach. Well, I thought, am I wrong? Are we dealing with the $37.97 or are we dealing with a different number? Well, the court adjusted because of Mr. Sabau's rent. He tied it to his rent and because his rent had changed, he first entered $37.97, then he entered a number that was slightly different for a different period, which is the reason why, in part, we are here today. Okay, so how do we review whatever number you're fighting about? How do we review the judge's determination under what standard of review? Well, because the court has now clarified this is a summary judgment motion, the clearly erroneous standard would apply to the determinations. Okay, so if we apply the clearly erroneous standard, didn't Mr. Sabau produce evidence of his actual expenses? He did produce evidence of his actual expenses, Your Honor. It may be terrible evidence, you may criticize it, but couldn't the judge have based that number on his proof? If that was the correct standard, and what we were arguing, Your Honor, is that is not the correct standard. Can I back up a minute? Why are we doing clearly erroneous if this is a summary judgment standard? One doesn't ordinarily do a clearly erroneous review in summary judgment. Well, Your Honors, we'll look and see, because it is a summary judgment, that whether the evidence is sufficient to support the legal standard. Right, so it's not a clearly erroneous standard. It's a de novo standard, isn't it? Right, it's a de novo standard. Well, actually, I'm sorry, I did misspoke. It is a de novo standard. Okay, so let me flip my question around. He produced evidence that showed what his actual expenses were, correct? Yes. You produced a lot of Craigslist ads that said, gee, I can find a one-bedroom apartment for less, because we're really only fighting about rent here, aren't we? That's essentially what the dispute is about. Did you, in fact, produce evidence of one-bedroom apartments for less, or I thought you presented evidence of single rooms for one-bedroom apartments. We had produced evidence of shared living arrangements. Right, okay, so whatever the evidence, in addition to other evidence, whatever the evidence was, it was basically want ads, was it not? Yes. So on the one hand, he comes in with his his actual expenses. On the other hand, you go to the newspaper and you find a bunch of want ads for descriptions of similar places. We don't know that they're Right? Well, as far as the, as far for this particular piece of evidence, because there's other evidence that was introduced for the motion, but for this these are offers to rent places. Right, they're want ads. Yes. And did you have any want ads for one-bedroom apartments that were less than what he had? No, we did not. No, you did not. So you were really fighting about whether he had to live in a single room by himself. What we were fighting about, and this is where the primary issue on this appeal that still exists, is essentially whether the standard is a, in Barnes termed it as reasonableness. You get a reasonable rate. There's a sliding scale here. Actual expenses, but you know more than reasonable. That's kind of a quick way to explain it. But didn't you put some ads with apartments similar to the one that he had? No. In excess of the rate that he was paying? No. Well, yes, in excess of the rate he was paying. No. What you showed, didn't you? No, I disagree with the counsel's math on that, because it's, but that's arguing for the best, you know, to benefit their client. But the issue in this case. No, no, math is math. Nobody told me math was going to be involved, but I want to make sure I understand the record. I'd understand this, I'd understand this record to show that some of the ads that you is that correct? No, your honor. I would, I would not agree with that characterization. One ad, for example, the primary ad that pointed out by counsel says, uh, winter rates share the, uh, share the utilities costs and the winter rates are this. Well, the utilities go up and down during the year. And, uh, the, the math, when it comes out to still shows that the $30 rate was acceptable within that. No, no, that's not what I'm asking. I'm asking whether or not there was evidence in this record that similar, uh, similar accommodations to the ones that Mr. Sabau had, uh, could be rented in that town for more than what he was paying. Uh, yes. And we would, we would agree with that, your honor, because the reality is, is that, and this is the problem with the use of the term reasonableness that we were asking this court now to, uh, to drill down on that issue, because what's reasonable to someone who makes $250,000 a year, maybe living in a single bedroom apartment or even a shared living apartment in Escala here in downtown Seattle is different from someone of lesser means. We're dealing with a summary judgment record and I'm trying to figure out what question of fact you think your evidence produced. As I look at your evidence, you showed a wide range of rates of, that you said, these are ones the court should consider in determining what the reasonable rental rate is. Some of them showed a rental rate slightly higher than what Mr. Sabau was paying. Most of them showed a rental rate below. That's your evidence. Let me put it in. And he, then he comes on and says, here's what I'm paying and that's prima facie. It's where, so is that enough to create an issue of fact? And what's the court supposed to try? Let me, let me, let me characterize the evidence because we're focusing on one portion of it. There were four different elements of the evidence put in. And if I could start with the rule that I think is the rule set forth by the Supreme Court and by this court previously, that the rate should be tied to the food and living expenses comparable to what's provided on the ship. Which in this case is a citizen. My understanding is, as I was saying before, that your contention is that he wasn't entitled to have a one-bedroom apartment. So it was a single bedroom for himself. Is that basically it? That, that is right. And your Honor, if you, if you. And because you say that's what's in the boat, what's in the ship. Is that basically what we're fighting about? That is what we're fighting about in this issue is that standard, your Honor. Whether in the Fifth Circuit and Hall, which the lower court adopted and said, essentially, they're not going to want. And didn't Barnes adopt it too? In Barnes? No, Barnes did not, your Honor. And that's why that issue is still here. And this panel will need to address that issue. The lower court found, similar to Barnes, that after explaining why it thought that there was no, no longer it made sense to apply the traditional standard, which this court has adopted in the city of Avalon and in Gardner, that it's a standard of essentially a single seaman living alone. And the lower court in this case, Judge Kuhnauer, did write that in the opinion. So, however. A single person living alone can't live in a one-bedroom apartment reasonably. Well, they can, your Honor. But if the standard relates to, historically, going back to, in this case with advocacy law, going back to the colds of Oleron in the Middle Ages, it's always tied to what's provided on the ship. So what we're, what we're talking about is, is this a shared living arrangement? And what the evidence that, your Honor, would refer to as far as these, this is a, these are shared arrangements that are even more generous as what's provided on the ship, because there's four people to a room. That would be something more like a hostile situation. And the purpose of that particular evidence was to show that even in a more generous shared living arrangement, that rates were still similar to what American Seafoods provided. That said, there are three other pieces of information we provided. One is that the, and this is referenced in this Court's decisions and in other courts' decisions around the, appellate court's decision around the country, which is essentially that there is, you look at rates which courts have found reasonable in the past, which in Western District of Washington have been in a range of 20 to 30 dollars per day. There's also rates that have been, evidence has been submitted in those cases, and that was between 20 and 35 dollars a day. This is evidence that through expert testimony and other testimony about what rates have been paid. And so, there was other evidence put in that goes to the rate laws and standards. I have two very specific questions for you. I know you're running out of time. One is that your, your opponent says the $2,500 payment is no longer at issue. Is it still at issue in your view? It is, Your Honor. The $2,500 is an issue, and that's whether an advance can be set off against a future award of maintenance. And there's two grounds. She says it was set off against something else already. Is that wrong? No, they filed a separate lawsuit on the liability case. Okay. And was it set off in that case? No, it was not specifically set off. The arguments in these cases were specifically preserved. So, they, I want to understand, you haven't gotten credit for that $2,500? That's correct, Your Honor. You haven't? Have not? We have not gotten credit for the $2,500 that was paid as an advance to Mr. Sabo. Okay. Second question. There was a settlement, but it wasn't part of the settlement? No, this particular case and the issues were, and this is not part of the record, of course, so, but the reason why this case is still pending is that these issues were carved out. That, for purposes of this appeal. Well, you may have carved it out, but if you already paid it, if they already paid it in effect to you, by taking it as giving you a credit in another case, it's moot. So, I mean, issues are fun to talk about, but I want to know whether or not you've gotten credit someplace for that $2,500 payment. In our position, Your Honor, and unfortunately we don't have agreements submitted to the court because this occurred long after this case. Are we remanded to the district court to determine that issue? Well, it's a remand if this panel agrees with our position. Let's assume you lose on everything else. Are you still looking for that $2,500 back? We are. Okay. And so we'd have to remand for the district court to determine whether you already got it? Yes, Your Honor. Okay. That would be correct. Okay. Second issue, I'm not sure you can answer this as quickly, but your position is that there should have been a trial? That there should have been a trial on the maintenance rate. Okay. Under the evidence showing that the rate was. Because the evidence that you produced created a material issue of fact about what a reasonable maintenance rate was. Correct. Okay. Yes. And our position is that the evidence we submitted. No, you answered my question. Okay. Was, in fact, lower than that. Now, let's go back to the merits, the standard. I mean, you say that Barnes did not adopt Hall, but Barnes cites Hall about 100 times. And says it's applying Hall. And you say it's not applying Hall. I'm not sure about the characterization. My understanding is that you're saying that Barnes did not adopt the substantive standard of Hall. Not entirely correct, Your Honor. What Barnes did is adopt a hybrid standard between Hall, B. Noble drilling, and also Incandela out of the Second Circuit. The difference, I believe there are substantive differences in the case that are not relevant now. As to the question of whether we're looking at reasonable land costs or whether we're looking at some comparison to what happened on the ship, nothing in Barnes says anything about a comparison to the ship. That's correct, Your Honor. Right? But you're still arguing for that anyway and saying that Hall, which definitively rejected the ship analogy, as I understand it, explaining that that's not the way the world works these days. You're saying Barnes did not adopt that. That's correct. Barnes went as far as adopting a reasonableness standard. However, the issue is what's the definition of reasonable is? Do you think Barnes held that we determine reasonableness by what reasonable accommodations would be for this person on land as opposed to on ship? The shore side equivalent of what? An example would be, Your Honor, is this. Counsel and I have a case in which a seaman has a three-bedroom townhouse, two-car garage, and his wife pays for some portion of it. So in that case, is that reasonable or is it because he's not a single seaman but he's a married seaman? In that case, he doesn't have kids. Other cases, they have kids. In some cases, people share accommodations that pay for it. That's not this case. This case, we have a single – well, let me just – let me give you a different case. We have a single seaman. He lives on a ship in a room with bunks and there's four people. Is it your position that the comparable accommodations on land ought to be a place with four people? Our position is that this allowance, city of Avalon of this court said – recognized that maintenance is simply an allowance. It doesn't cover living – actual living costs. But what that should do is based on that particular – You know a lot more about maritime law than I ever will, thank God. But I'm really asking a very simple question. What's your position? Is it your position that we're supposed to look at him living with – what it would cost for him to live with four other people in a single room or we look at what's reasonable for a single person to live in in the absence of his prior accommodations? The former. In this particular case, in this particular seaman – Do you think Barnes held that? I'm sorry. Do you think Barnes tells us to do that? No, Barnes does not tell to do it. Barnes adopted the hybrid between Incandela and Hall by applying not only this actual versus reasonableness framework but also providing a burden of proof standpoint for dealing with – because these are only for purposes of – Oh, what standpoint? I'm sorry, I didn't hear that. A burden of proof. All right. Okay, your time is up. We'll give you a minute to rebuttal. Thank you very much. May it please the court. Before getting into the meatier issues, I'd like to address the advance issue. If permitted by the court, I would be more than happy to supplement the record with a copy of the settlement agreement in Mr. Silva. Well, here's my problem. It's not in this case. Maybe you can go back to the district court and have the district court sort that out. But at least as this case comes to us, there's a fight about this $2,500. They say they advanced it. You really don't dispute that they advanced it, do you? Not at all. Not at all, Your Honor. Okay, so as so far as this case is concerned, there ought to be a reduction of $2,500. Presumably you can go back to the district court and say, well, I already gave it back to them. Yes, Your Honor. Okay. So the two of you agree at least on the status of the record on that? Yes, and we couldn't submit the settlement agreement as part of the record because that settlement was reached long after all the briefing in this field. Well, and since the other side is apparently unwilling to stipulate that the $2,500 was actually credited to them, we're going to have to send that issue back to somebody. Do we then have to decide a merits issue about the $2,500, or do we just send it back? I think the court could send it back on that issue because it's not part of the record. You agree that it was an advance? Agreed. And in the absence of you having credited it to them in some other place, we'd have to reduce the award by that amount? Yes, Your Honor. However, this wasn't raised in any of the briefing, but there is a maritime rule against it. I have a hard time understanding the maritime rules that were raised in the briefing. So let me get back to the last point I asked your colleague about. You put in some evidence about his actual expenses. Yes. They put in some evidence. I won't characterize it. Why wasn't there an issue of fact created by that massive evidence that the judge had to make a finding? Because, Your Honor, they submitted evidence of rooms which cost $195 per week and $200 per week, and both of those rooms exceeded the cost of Mr. Sabo's $800-a-month apartment in designated low-income housing, which required an income qualification. You were arguing about whether it's a room or an apartment. They seem to be saying it has to be a room, not an apartment. Well, if this Court follows Hall, which was expressly adopted in Barnes, it's clear that a seaman is entitled to their actual reasonable expenses, including the cost of a one-bedroom apartment. Which at least is a one-bedroom apartment. Correct. And in Block Island, the First Circuit recognized that it's only the exceptional case where a seaman will not get his actual expenses, and that goes beyond just a one-bedroom apartment. But they didn't decide how we figured out what the actual expenses – how we figured out what case was exceptional or not. So they say we put in a bunch of evidence. Again, I'm not going to characterize their evidence. And you had some evidence of actual expenses. At what point do we reach a triable issue of fact? Or – so tell me how we apply these rules. I would say there is a triable issue of fact once there is evidence that the reasonable rate does not exceed – or does not exceed the seaman's actual expenses. In this case, American Seafoods never once took the position that Mr. Sabo's actual expenses were unreasonable. In all of the briefing below – All the evidence was that there were other places that he might have chosen instead that were slightly cheaper, maybe in some cases slightly more. Correct. And I think I put an example in my briefing that if there's one gas station that charges $2.79 on one corner, and across the street there's a gas station that charges $2.85 for a gallon, it doesn't mean that the gas station charging $2.85 is unreasonable. There's a range of reasonable expenses. And any expense within that range should be awarded as maintenance. And if there isn't an issue of the rate – I'd like to talk about this if the court is concerned about the shared living arrangements versus one-bedroom issue. But if not, I'd like to move on to the summary judgment standard. Well, just a minute back on that. I mean, do you understand Barnes to have – I mean, it doesn't quite adopt that part of Hall that says a one-bedroom apartment is fine, right? It doesn't directly repudiate this notion about having to be comfortable to the ship or whatever. It just says reasonable living expenses. Barnes does not discuss that portion of Hall, but it does say that Hall is roundly accepted. And Barnes doesn't say only portions of Hall are roundly accepted. But it also – but there is language in earlier opinions about this ship comparison, which does seem – Yes, Your Honor. And the way that should be interpreted is if there is something that has an on-land analog, that is something that's awarded. For example, having a roof over your head, that's something where there is a shipboard analog. Having food, that has a shipboard analog. Cable television, there is no shipboard analog. Cell phone, no shipboard analog. And so those expenses are not included in maintenance, but the expenses that have a shipboard analog are included in the maintenance calculation. I.e., a place to sleep. Correct. And a roof over your head. But in any event, you would say it all doesn't even matter here because some of the – what they submitted with regard to individual rooms is still at the same rates that he's paying for the one-bedroom apartment. Correct. And it's somewhat problematic to consider someone living in low-income housing to have an unreasonably expensive living arrangement. That's the lowest expenses available in this community. The rate that American Seafoods sought to pay was beneath the federal poverty guideline. To expect a seaman to live on less than that is simply not – in this case, there was $7.97 more than American Seafoods was paying that SABO sought, and barely more than the federal poverty guideline. And they're still here saying they should have been able to pay less. What did he mean when he said that there was some confusion about what the actual amount ordered was? Was it not the $37.97? It was, Your Honor. There were – so Mr. SABO's rent was $775 a month for a portion of the period that he received maintenance, and it was increased to $800 a month later on. And the award for the portion where his rent was $775 per month related to that amount of rent. And then when it switched to $800, the amount went up. Do you want to talk about the fees at all? I do, Your Honor. In this case, there has not been one case that American Seafoods has cited where a court has awarded less than a seaman's reasonable expenses. They haven't once taken the position that Mr. SABO's expenses are unreasonable, yet we are here today. The case law is clear that if there is not a colorable legal theory on which to deny maintenance, then attorneys' fees should be awarded. Now, at what point in time are you seeking attorneys' fees from? It seems to me that if we were – if we view Barnes as a change in this circuit's case law, up until then, were they reasonable? They still didn't cite a single case. Well, some citations are – you may not be a great lawyer. That's a separate issue. Reasonableness is not about how great a lawyer you are. The question is, was their position contesting your maintenance request a reasonable position until Barnes, or was it unreasonable even before Barnes? It was unreasonable even before Barnes because the cases they were relying on specifically said that actual expenses should be awarded. I understand. Was it unreasonable for them to argue before Barnes that $30 a day was a reasonable maintenance? Well, Your Honor, that was never the question. It's not whether someone living on $30 a day was incurring reasonable expenses. It's whether $37.97 per day is reasonable. Well, their position was, as I understand it, gee, there have been a lot of these decisions involving similar situations in this district, and the awards were normally $30 a day, so we're offering $30 a day because we think that's a reasonable amount. Why is that an unreasonable position before Barnes? There are also decisions awarding much more. One case awarding $90 per day is Foss Maritime Company v. Easley. It was heard in this court, I believe, in 2011 or 2012. That's a Ninth Circuit case. But their position has to be essentially frivolous, doesn't it, to first award fees, baseless. Correct. Is it really baseless to offer an amount that a number of seamen in similar circumstances have received? It may be wrong. It may not be reasonable as applied to your client, but is it baseless? It is when the seaman has given evidence of the actual reasonable expenses. And in this case, $7.97 isn't very much money. It's not very much money to anyone involved except for Mr. Sabo. The real problem here is that they're not interested. I mean, they're not interested in the $7.97. They're interested in $7.97 for thousands of people over the years. So obviously the way they've been litigating is not accounted for by the amount of money in this case. But does that matter? It does, Your Honor. American Seafoods is seeking a mechanism to squeeze seamen who also have Jones Act and unseaworthiness claims. If those seamen are receiving less in maintenance than they need to pay their rent or pay their mortgage and pay for food and keep their lights on, then those seamen are in a very difficult situation, and this gives the vessel owner leverage to prevent them from fully pursuing their rights in other areas. Can I just raise one point for both of you? Because I understand that technically the $2,500 settlement or advance issue is in front of us. If you both do agree that it was advanced in the other case, it was credited against the other case, I for one would very much appreciate if you could see if you can stipulate as to that issue. If you can't, then fine, we can decide it. But it strikes me that I don't want to have for us to look at . . . actually have to deal with an issue that both sides agree may have been taken care of but isn't technically in front of us. So I would urge the two of you to talk about that. Yes, Your Honor. Okay. Well, your time is up. Thank you very much. Just a couple of points, Your Honor. First of all, on the advance, Judge Cunero below ruled that we could not take the advance. So that's why I think it's presented here. There's still that legal issue. I understand that legal issue is presented, but if in fact you've already gotten credit for it, I don't care about the legal issue. Yes, and I agree with Your Honor. Go to the other side and let me know what . . . Yeah, absolutely. These things should be taking up court time. I fully agree. On the issue, one issue we haven't discussed just briefly has to do with the 56D relief. With what? I'm sorry? The 56D relief for discovery pending the summary judgment motion. The Court has now clarified in Barnes that this is a summary judgment motion, so that does come into play. So did you file a 56D affidavit? We requested it in our briefing. The answer is no. Well, we requested it in our briefing. File a 56D affidavit. Doesn't local rules require that? The rule says . . . Yes. . . . if you want additional time to conduct discovery . . . Yes. . . . you must file a declaration or an affidavit that describes with particularity what discovery you wanted. Yes, Your Honor. That was done in the briefing itself for the motion. So you did not file a Rule 56D affidavit, did you? Not as separately as an affidavit, Your Honor. Okay. As the rule requires. All right. Let me ask you another question on the record. Let's go back to the question of whether some of the even single rooms that you submitted were essentially at the same rate of what he's paying. No? No, Your Honor. Why not? There's one here that says $200 a week. The other one says $195 a week for single rooms. This is why, Your Honor. This is an example of no good deed goes unpunished. The point that we were making in submitting this evidence is that this is a shared living arrangement, but a greater shared living arrangement than what it is. So we were showing that even at that rate where compared to what he was provided on this fishing vessel . . . So you're saying he wasn't even entitled to have a single room? That's correct. And you're . . . That's correct, Your Honor. One thing I will add here is that just to clarify, the primary issue for this court to decide that's left over from Barnes has to do with whether it's this food and lodging undergardener that's provided on the ship or if it's going to go into Hall, whether it's going to be a single seaman. You're not arguing about the food, as I understand it. I'm sorry? You're not arguing about the food amount. No, no, not at all. Okay. So it really just comes down to the lodging. However, whether the standard has to go to comparable to the vessel or for a single seaman living alone in the locality, if there is no evidence submitted in the record as to a single bedroom and if the court decides that that is the appropriate standard for figuring out the rate, then the court was correct in entering the order. We would agree with that. We did not submit evidence to show that a single bedroom apartment was, that his rate was, or rent was in that range. Right. So the fight is about whether he should have been living in a single room. That's correct. Whether he should have been living in a single room with four other people, with three other people. Because your evidence is even with regard to the single room, it was still reasonable. Right. But that was a single room for one person. Right. So therefore, your ultimate baseline position is that the correct comparison is to a shared bedroom. Correct. Okay. All right. Your time is up. Thank you very much. Thank you. All right. Thank you both. The case of Sabal v. American Seafoods Company is submitted and we will go to the last argued case of the day.
judges: Thacker, Berzon, Hurwitz